HAROLD A. DAVISON, RELATOR, v. ARTHUR A. PATTER-SON ET AL., RESPONDENTS.

Submitted March 29, 1920—Decided June 5, 1920.

1. The act of 1919, chapter 125 (*Pamph. L.*, *p.* 290), amending the Soldiers' and Sailors' act of 1897 (*Pamph. L.*, *p.* 142; *Comp. Stat.*, *p.* 4871), is unconstitutional, so far as relates to the extension of the purview of the act of 1897 to honorably discharged soldiers, sailors and marines who have served in any other war than the civil war; such extension as the object of the act of 1919 not being expressed in its title.

2. Where the title of an amendatory act in undertaking to express the object of such act goes no further than to indicate an intention to amend the original act, such title is not constitutionally adequate as an expression of intention to enlarge materially the scope of the former act by the inclusion of classes of persons not originally covered thereby.

3. The act of 1919 (*Pamph. L.*, *p.* 290) provides that honorably discharged soldiers, &c., shall be preferred for appointment, employment and promotion provided they possess the business capacity necessary to discharge the duties of the position involved. *Held*, that where the power of appointment was vested in the mayor, subject to confirmation by the council, it was the duty of the mayor to investigate and determine as a matter of fact whether or not a candidate possessed the business capacity necessary to discharge the duties of the position involved, and where he had after due investigation decided this question adversely to the candidate, and therefore refused to nominate him, his action in the matter would not be reviewed by a *mandamus* to require him to nominate and the council to confirm such candidate.

4. Whether the act of 1919 (*Pamph. L.*, *p.* 290) relates to appointments to and removals from public office as distinct from a position or employment, *quære*.

On rule to show cause why a writ of *mandamus* should not issue.

Before Justices SWAYZE and PARKER.

For the relator, *Warren Smock*.

For the respondents, *John S. Applegate*.

The opinion of the court was delivered by

PARKER, J.   The relator as an honorably discharged soldier of the United States, having served as such in the war with Germany, claims the preferential right to appointment as borough clerk of the borough of Red Bank, under the statute of 1919. *Pamph. L., p.* 290. There is little or no question about the regularity of his candidacy and application for the office. The mayor, whose duty it is to nominate to the office, under the Borough act, refused to nominate the relator on the ground that he did not consider him properly qualified to perform its duties. The relator applied to a justice of this court for, and obtained the present rule, which calls upon the mayor and councilmen to show cause why a writ of *mandamus* should not issue commanding and enjoining them to "nominate, ratify and confirm the relator as sole soldier applicant for the office of borough clerk, as borough clerk of the borough of Red Bank," &c.

The act on which the relator's claim is based is an amendment of the body, and intended as an amendment of the title, of the so-called "Veteran act" of 1897. *Pamph. L., p.* 142; *Comp. Stat., p.* 4871. That act applied solely to "honorably discharged Union soldiers," *i. e.,* veterans of the civil war who had served on the Union side. It has been passed upon in several decisions, the principal effect of which has been to restrict its operation to the "public service of the State of New Jersey" as expressed in its title. We cite the cases for convenience of reference. *Hardy* v. *Orange,* 61 *N. J. L.* 620; *Sutherland* v. *Jersey City, Id.* 436; *Conklin* v. *Freeholders,* 62 *Id.* 168; *Kreigh* v. *Freeholders, Id.* 178.

The scope of the act of 1919 is much broader, as it extends
to honorably discharged soldiers, sailors and marines "who
have served in *any* war in which this country now is or has
been engaged." This is the really substantial amendment of
the body of the act.

.It is urged in opposition to the present rule, that the act
of 1919 is unconstitutional because its object is not ex-
pressed in its title (*Const.*, *art.* 4, *sec.* 7, *par.* 4) ; and we
conclude that this point is well taken. The title of the 1919
act reads as follows: "An act to amend an act entitled 'An
act respecting the employment of honorably discharged Union
soldiers, sailors and marines in the public service of the
State of New Jersey relative to removals,' approved March
thirty-first, 'one thousand eight hundred and ninety-seven,
and to amend the title of said act." It will be observed that
no indication is given of what sort of amendment to the title
and body of the act of 1897 is intended, and where the pro-
posed amendment involves the inclusion of an entirely new
class of persons as beneficiaries of the legislation, it falls
within the rule laid down by the Court of Errors and Ap-
peals in *Hedden* v. *Hand,* 90 *N. J. Eq.* 583, where the
attempt was to subject a new class of objects to the ban of
the Nuisance Abatement act. If the sole object was, for
example, to amend the title of the 1897 act so as to include
the municipal offices covered by its body, an amendment en-
titled simply as an act to amend the title, without stating
how, might be sustainable under such cases as *Sawter* v.
*Shoenthal,* 83 *N. J. L.* 499, and *Patterson* v. *Close,* 84 *Id.*
319 ; but as we have pointed out, this amendment of 1919
attempts to make a broad extension of the scope of the act
of 1897 as to persons affected, and this, we think under
Hedden *v.* Hand, cannot be done.

This result is dispositive of the case; but it seems well to
add a few observations on the function of the writ of *manda-
mus.* It was remarked by the writer in *Newark* v. *Lewis,*
82 *N. J. L.* 279 (at *pp.* 281-2), that the office of the writ, as
directed to a public officer, is to compel him to do something
that he is required by law to do and has failed or refused

to do, rather than compel him to do in a different way what he has already done. If he is vested by law with discretionary power or with the jurisdiction to decide questions of law or to ascertain matters of fact, the court will not by proceedings by *mandamus* usurp the power to dictate how the discretion shall be exercised, or to decide what conclusions of law or of fact shall be reached. *Benedict* v. *Howell*, 39 *Id.* 221, 224; *Mooney* v. *Edwards*, 51 *Id.* 479; *Gleistmann* v. *West New York*, 74 *Id.* 74; *Hansen* v. *De Vita*, 77 *Id.* 267. The act of 1919 prescribes that persons such as the relator "shall be preferred for appointment, employment, and promotion; * * * provided, they possess the business capacity necessary to discharge the duties of the position involved." It clearly appears in this case that the mayor, whose duty it is to make the nomination in the first place, examined into the capability of the relator with a view of ascertaining whether he came within the proviso, and determined that he did not possess the qualifications required. This, of course, is a finding of fact with which, under the rule just enunciated, we cannot interfere in this proceeding. It is true that the act mentions *mandamus* as "a remedy for righting the wrong," but it does not contemplate it as a means of ascertaining the existence of a wrong. That must be done in some other way.

It may be proper to add that there is at least grave doubt whether the act of 1919 relates to a public office as distinguished from a position or employment. We content ourselves for the present with calling attention to this feature, on which it is unnecessary to pass in view of the foregoing results.

The rule to show cause will be discharged, with costs.